O

# United States District Court
# Central District of California

| | |
|---|---|
| VALERIE RUSSO, | Case No. 2:14-cv-03184-ODW(JCGx) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT** |
| APL MARINE SERVICES, LTD., and | **APL MARINE SERVICES, LTD.'S** |
| JAMES LONDAGIN, | **MOTION TO DISMISS WITH** |
| Defendants. | **LEAVE TO AMEND [9]** |

## I. INTRODUCTION

Plaintiff Valerie Russo initiated this action alleging that Defendant ship captain James Londagin sexually battered her aboard the APL Korea—Defendant APL Marine Services, Ltd.'s cargo vessel. APL moves to dismiss Russo's battery claim for failure to plead facts sufficient to establish the elements of battery. APL further contends that it cannot be held vicariously liable for Londagin's alleged battery as a matter of law. For the reasons discussed below, the Court GRANTS APL's Motion to Dismiss Russo's battery claim WITH LEAVE TO AMEND.[1]  (ECF No. 9.)

///

///

---

[1] After carefully considering the papers filed in support of and in opposition to APL's Motion to Dismiss Russo's battery claim, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

On December 4, 2012, APL hired Russo as a Chief Cook aboard the APL Korea. (Compl. ¶ 5.) Russo alleges that after the vessel sailed for ports of call in Asia, Londagin—captain of the vessel and employee of APL—demanded that Russo engage in sexual relations with him. (Compl. ¶ 6.) Russo further alleges that after a short time at sea, she "refused to continue to engage in sexual relations" with Londagin. (Compl. ¶ 7.)

On March 24, 2014, Russo initiated this action against APL and Londagin. (ECF No. 1, Ex. 1.) Russo alleges claims against Defendants for: (1) sexual harassment in employment; (2) sexual discrimination; (3) retaliation; (4) wrongful termination in violation of public policy; (5) battery; (6) negligence; (7) unseaworthiness and (8) maintenance and cure. (*Id.*)

On April 25, 2014, APL removed this action to this Court, invoking the Court's admiralty jurisdiction under 28 U.S.C. § 1333 and diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) On May 2, 2014, APL moved to dismiss Russo's battery claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.)

## III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

/ / /

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

APL moves to dismiss Russo's battery claim because it asserts that it is not vicariously liable for Londagin's alleged battery. APL further argues that Russo fails to allege the required battery elements. Russo counters that when construing the allegations of the Complaint in the light most favorable to her, the elements of battery are properly established. Russo also argues that the question of whether Londagin's alleged battery can be imputed to APL is a fact question for the jury that cannot be decided on a 12(b)(6) motion.

**A. ADMIRALTY JURISDICTION**

APL asserts in its removal that the Court has subject-matter jurisdiction based on both admiralty and diversity-of-citizenship jurisdiction. Although Russo never challenged the alleged admiralty jurisdiction, the Court has an independent duty to

/ / /

/ / /

ensure admiralty jurisdiction exists.² *See id.*; *see also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93–102 (1998).

To invoke admiralty jurisdiction over a tort claim, two requirements—location and connection with maritime activity—must be satisfied. *Tobar v. United States*, 639 F.3d 1191, 1197 (9th Cir. 2011); *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009). First, "the tort must occur on or over navigable waters ('locality requirement')." *Tobar*, 639 F.3d at 1197 (internal quotation marks omitted)." Second, "the actions giving rise to the tort claim must bear a significant relationship to traditional maritime activity (nexus requirement)." *Id.*

*1. Locality requirement*

For the purpose of determining admiralty jurisdiction, the situs of a tort is the place where the injury occurs. *Tobar*, 639 F.3d at 1197. Russo alleges that the sexual battery occurred on the vessel, in navigable waters. (Compl. ¶ 6.) Thus, Russo satisfies the locality requirement. *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628 (1959) (finding that admiralty jurisdiction clearly exists where a crewmember sexually batters another while they are onboard the ship).

*2. Nexus requirement*

The nexus requirement has two prongs: First, the court must determine whether "the general features of the type of incident involved has a potentially disruptive impact on maritime commerce." *Tobar*, 639 F.3d at 1197 (citing *Grubart*, 513 U.S. at 534). Second, the court must assess "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.*

As to the first factor, the Ninth Circuit has cautioned that the type of incident involved is "to be considered at an 'intermediate' level of generality." *Taghadomi v. United States*, 401 F.3d 1080, 1086 (9th Cir. 2005). Here, sexual battery aboard a

---

² Because Russo is a California citizen and no defendant resides there, diversity jurisdiction clearly exists in this case. *See* 28 U.S.C. § 1332(a).

cargo vessel certainly has a potentially disruptive impact on maritime commerce. In *Doe v. Celebrity Cruises, Inc.*, the plaintiff passenger was sexually assaulted by the defendant's crewmember offshore. 394 F.3d 891, 918 (11th Cir. 2004). The Court found that the crewmember's sexual assault of a passenger "obviously ha[d] a potentially disruptive impact on maritime commerce," because "if rape or other forms of sexual battery became a concern of passengers, cruise-ship business would necessarily suffer." *Celebrity Cruises*, 394 F.3d at 900.

Although the cargo industry is less public than the cruiseline industry, a captain's battery of a subordinate crewmember could still result in a similar decline in business. Indeed, actions that have a direct effect on seaman's health, lives, and ability to perform their duties are generally found to have a sufficient potential impact on maritime commerce. *See e.g.*, *Gruver v. Lesman Fisheries Inc.,* 489 F.3d 978, 982–83 (9th Cir. 2007) (finding that an assault on a seaman-crewmember by his former employer had the potential to disrupt maritime commerce because it affected the seaman's wellbeing and rendered him unable to fish); *Taghadomi,* 401 F.3d at 1086 (finding a sufficient potential impact where crewmembers attempted a rescue mission for kayakers that fell overboard because the "efficacy of search-and-rescue operations has a direct effect on the health and lives of seamen"); *Coats v. Penrod Drilling Corp.,* 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc) ("Without a doubt, worker injuries . . . can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel.").

Regarding the second factor, the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company* advised that courts,

> need to look only to whether one of the arguably proximate causes of the incident originated in the maritime activity of a tortfeasor: as long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will "involve" such traditional maritime activity and will meet the second nexus prong.

513 U.S. 527, 541 (1995). The Supreme Court has interpreted the nexus prong broadly. *Id.* at 542 ("[V]irtually every activity involving a vessel on navigable waters would be a traditional maritime activity sufficient to invoke maritime jurisdiction.") (internal quotation marks omitted).

Here, the incident (tort) at issue is Londagin's alleged battery of Russo. Cautious of the Supreme Court's mandate to characterize the relevant activity generally—but not so generally as to ignore the maritime context—the discrete activity giving rise to the battery in this case is Londagin's management of the crew as captain of the vessel. It was Londagin's position as captain of the vessel—and thus Russo's superior—that provided for interaction between Londagin and Russo, the ship's cook. Indeed, Russo alleges that Londagin "used his position as Master of the APL Korea to coerce [Russo], while she was a member of the crew of the vessel to engage in sexual relations with him aboard the vessel." (Compl. ¶ 39.)

Clearly, a captain's operation and management of the ship's crew has a substantial relationship to a traditional maritime activity. *See N. Queen Inc. v. Kinnear*, 298 F.3d 1090, 1096 (9th Cir. 2002) (stating that the captain has a "duty to operate the vessel in a safe manner . . . [and the] ultimate responsibility for the safety of all crew on board.")*; Celebrity Cruises*, 394 F.3d at 900 (holding that the interaction between crewmembers during a trip on navigable waters bears a substantial relationship to a traditional maritime activity). Accordingly, because Russo's battery claim both occurred in navigable waters and is substantially related to a traditional maritime activity, the Court has admiralty jurisdiction

**B.    CONFLICT OF LAW**

The Court must next determine whether to apply admiralty law or state law to Russo's battery claim. The parties couch their respective contentions primarily in terms of California law—but without explanation. Usually "courts apply general principles of maritime law in cases subject to admiralty jurisdiction." *Watz v. Zapata Off-Shore Co.*, 431 F.2d 100, 112 (5th Cir. 1970). But even when a Court has

admiralty jurisdiction over the tort, "courts applying maritime law may adopt state law by express or implied reference or by virtue of the interstitial nature of federal law." *Alcoa S. S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967). Thus, in cases in which the issues are not sufficiently addressed by maritime law, and where state law fills those gaps in a way that is not destructive to the uniformity that admiralty law endeavors to maintain, the relevant state law applies. *Watz v. Zapata Off-Shore Co.*, 431 F.2d 100 (5th Cir. 1970).

For example, in *Baggett v. Richardson*, the plaintiff sued the defendants for personal injuries resulting from battery and assault that occurred aboard a tugboat in navigable waters. *Baggett v. Richardson*, 473 F.2d 863, 864 (5th Cir. 1973). Applying *Alcoa*, the court determined that the application of state law was appropriate because assault and battery issues are not touched by maritime law. *Id.* Like *Baggett*, the battery at issue here is only a maritime tort because it occurred aboard a ship on navigable waters. In all other respects this is a California tort claim, and is so considered by the parties. *See Bagett*, 473 F.2d at 864. Because Russo's battery claim is similarly not touched by maritime law and the application of California battery law will not interfere with the uniformity of maritime law, the Court applies California law to determine whether Russo has sufficiently alleged a battery claim against APL. *See id.*

C. **VICARIOUS LIABILITY**

APL first argues that Russo's battery action fails as a matter of law because any sexual misconduct committed by Londagin falls outside the course of his employment with APL. Russo counters that anything done by a captain at sea is within the course and scope of employment because the captain's authority as master of the vessel is complete and undivided. Russo further argues that APL's liability is a question of fact that should not be decided on a 12(b)(6) motion.

Under California's doctrine of *respondeat superior*, an employer is vicariously liable for the torts of his employees committed within the scope of the employment.

1  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.4th 291, 296 (1995). It is well
2  established in California that "an employee's willful, malicious and even criminal
3  torts may fall within the scope of his or her employment, even though the employer
4  has not authorized the employee to commit crimes or intentional torts. *Xue Lu v.*
5  *Powell*, 621 F..3d 944, 948 (9th Cir. 2010). In determining whether an employee is
6  acting within the scope of his or her employment, the Court apples a multi-factor test
7  which considers the foreseeability of the employee's conduct, whether it is authorized
8  or unauthorized, and whether it is tortious or criminal. *Id.*

9  Ordinarily, the determination of whether an employee has acted within the
10 scope of employment presents a question of fact. *Id.* at 299. However, that
11 determination becomes a question of law when the facts are undisputed and no
12 conflicting inferences are possible. *Id.*

13 Necessarily, such a determination is difficult at the motion-to-dismiss stage.
14 APL cites to *Ferguson v. Horizon Lines, Inc.* to support its contention that it is not
15 liable for Londagin's alleged battery as a matter of law. (Mot. 6.) In *Ferguson*, the
16 plaintiff sought to attach vicarious liability on the company-shipowner for its
17 employee-crewmember's sexual assault. *Ferguson v. Horizon Lines, Inc.*, Case No.
18 CV11-3391 MEJ, 2012 WL 5519201, at *3 (N.D. Cal. 2012). Ultimately, the court
19 granted summary judgment for the company-shipowner, finding that the employee-
20 crewmember's assault was neither foreseeable nor related to his job duties. *Id.* at *9–
21 18.

22 This action, however, is not at the summary-judgment stage. Whether
23 Londagin was acting within the scope of his employment is a fact-specific inquiry, the
24 determination of which requires consideration of evidence not contained within the
25 four corners of the complaint. This is especially true in light of Londagin's unique
26 position as captain of the vessel. APL presents no authority—under either California
27 or maritime law—that states that, as a matter of law, vicarious liability does not attach
28 / / /

Case 2:14-cv-03184-ODW-JCG Document 19 Filed 07/14/14 Page 9 of 10 Page ID #:137

to a shipowner for its captains sexual battery of a crew member. Accordingly, such a determination cannot be made at the motion-to-dismiss stage.

### D. BATTERY

APL next moves to dismiss Russo's battery claim because Russo fails to plead facts sufficient to establish the elements of battery. To prevail on a battery claim, a plaintiff must establish that: (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's situation would have been offended by the touching. *Avina v. United States*, 681 F.3d 1127, 1130-1131 (9th Cir. 2012).

In her Complaint, Russo alleges that Londagin demanded that Russo engage in sexual relations with him. (Compl. ¶ 6.) Russo further alleges that "within a relatively short time, she asserted herself and refused to continue to engage in sexual relations with [Londagin]." (Compl. ¶ 7.) These allegations do not sufficiently track the elements of battery.

The Court can reasonably infer that a harmful and offensive touching occurred at some point from the allegations contained within Russo's Complaint. But, for example, Russo does not clearly allege that the harmful or offensive touching was nonconsensual or continued after she indicated her lack of consent. Accordingly, the Court finds that Russo did not sufficiently allege enough factual detail to support her battery claim. Defendants' Motion to dismiss Russo's battery claim is therefore **GRANTED**.

/ / /
/ / /
/ / /
/ / /
/ / /

9

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss Russo's battery claim. (ECF. No. 9.) Russo may amend her complaint within 30 days.

**IT IS SO ORDERED.**

July 14, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**