O

# United States District Court
# Central District of California

| | |
|---|---|
| VALERIE RUSSO,<br><br>    Plaintiff,<br><br>    v.<br><br>APL MARINE SERVICES, LTD.;<br>JAMES LONDAGIN; and DOES 1–10,<br>inclusive,<br><br>    Defendants. | Case No. 2:14-cv-3184-ODW(JCGx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT APL MARINE SERVICES, LTD.'S MOTION FOR PARTIAL SUMMARY JUDGMENT [34]** |

## I.  INTRODUCTION

Plaintiff Valerie Russo ("Russo") alleges that Defendants APL Marine Services, Ltd. ("APL") and Captain James Londagin ("Captain Londagin") violated a myriad of California state and federal laws, including sexual harassment, sexual discrimination, negligence, and unseaworthiness while on the high seas.  Defendants move for partial summary judgment on the basis that California state law does not apply extraterritorially in this matter, and on the basis that Plaintiff's remaining claims fail as a matter of law.  For the reasons discussed below, the Court **GRANTS IN**

**PART** and **DENIES in part** Defendants' Motion for Summary Judgment.[1] (ECF No. 34.)

## II. FACTUAL BACKGROUND

This case arises out of a failed romantic relationship between Plaintiff Valerie Russo, a former employee of APL, and Captain Londagin which was rekindled during a voyage aboard APL's commercial vessel, the APL Korea in December 2012. Plaintiff was employed by APL for approximately eight years, beginning in May 2004, as a Chief Cook for intermittent voyages aboard the APL Korea[2]. (SUF 4, 5.) During her employment with APL, Plaintiff sailed with the vessel on eleven occasions, each of which was an international voyage generally lasting between thirty-three and forty-two days. (SUF 6.)

In 2004, Plaintiff first met Captain Londagin aboard the APL Korea, and on a subsequent voyage in 2011, Plaintiff and Captain Londagin began a consensual sexual relationship. (SUF 9, 10, 11.) In early 2012, Plaintiff continued to see Captain Londagin on shore and estimates that she invited him to stay the night at her apartment in San Pedro, California, on approximately three separate occasions. (SUF 12.) Plaintiff and Captain Londagin also went to Parker's Lighthouse, a restaurant in Long Beach, California, for a date on Valentine's Day in 2012. (SUF 13.) Plaintiff gave Captain Londagin a rose and a teddy bear on that occasion. (SUF 14.) Sometime after Valentine's Day, Plaintiff visited Captain Londagin aboard the APL Korea, after which the two went on a dinner date and then went back to Plaintiff's apartment in San Pedro. (SUF 16, 17.)

Plaintiff and Captain Londagin did not see each other from mid-2012 through December 2012, but they frequently communicated by phone and email. (SUF 18.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.
[2] The APL Korea will be referred to hereafter as simply "the vessel."

2

Plaintiff did not believe that she and Captain Londagin were exclusive at this point, but the two discussed rekindling their relationship. (SUF 19.) This motivated Plaintiff to seek employment aboard the APL Korea for its December 2012 voyage. (SUF 20.)

When the Plaintiff boarded the vessel on December 4, 2012, she was excited about being with Captain Londagin again. (SUF 21.) When she first saw Captain Londagin they embraced and kissed in the elevator and engaged in sexual activities later that evening. (SUF 22.) Plaintiff and Captain Londagin continued to see each other during the voyage in either Plaintiff's room or the Captain's. (SUF 23.)

The vessel departed Oakland, California on December 5, 2012, at which time it sailed for San Pedro, where it arrived the next day. (SUF 24.) The vessel departed San Pedro for Yokohama, Japan, on December 10, 2012 (SUF 24) enteriing international waters approximately three hours after departing San Pedro. (SUF 25.)

About a week and a half into the voyage, when the vessel was well into international waters, Plaintiff ended her relationship with Captain Londagin, allegedly because of a dispute between the Captain and the ship's Steward. (SUF 26.)

Plaintiff states that after she ended her relationship, he engaged in harassing behavior toward her. Plaintiff offers the following evidence: (1) Captain Londagin slapped Plaintiff's buttocks on one occasion (SUF 27); (2) Captain Londagin requested that they have "make-up sex" on at least ten occasions (SUF 28); (3) He banged on her door at night (SUF 29); (4) He laid on the deck outside of Plaintiff's state room on four occasions (SUF 31); (5) He criticized her work performance (SUF 32); and (6) He denied her overtime pay (SUF 33).

Other than Captain Londagin's alleged slap of her buttocks on one occasion, Plaintiff admits she had no other physical contact with him after she ended their relationship. (SUF 35.) Plaintiff testified that after the buttock slapping incident, she

3

told him that "he's sick," but did not tell anyone about that incident or any other. (SUF 36–39.)

On December 21, 2012, Captain Londagin terminated Plaintiff's employment aboard the APL Korea following a discussion the two had in his room. (SUF 42–44.) During this discussion, the Captain claims that as Plaintiff was leaving the room, she threw a Sharpie pen back into his quarters. (SUF 43.) Plaintiff disputes that this happened. (Plaintiff's Response to SUF 43.) Captain Londagin claims that this behavior was improper and aggressive, and he terminated Plaintiff. (ECF No. 1, Ex. 1.) Later that day, APL issued a letter to Plaintiff stating her employment had been terminated "for exhibiting aggressive behavior toward a senior officer" on the APL Korea. (SUF 45.) Approximately one day after receiving this document, they reached the port of Yokohama, Japan and an agent escorted Plaintiff off the vessel. (SUF 46.)

On March 24, 2014, Plaintiff filed this action against Defendants APL Marine Services, Ltd. and Captain Londagin in the California Superior Court alleging Sexual Harassment, Cal. Gov. Code § 12940 et seq.; Sexual Discrimination, Cal. Const. Art. 1 § 8; Retaliation under Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940 et seq.; Wrongful Termination, Cal. Gov. Code § 1294- et seq.; Battery; Negligent Infliction of Emotional Distress (Jones Act); Unseaworthiness (Maritime Law); and Maintenance and Cure (Maritime Law). Defendant APL Marine Services properly removed the case to federal court on April 25, 2014. (ECF No. 1.) On July 13, 2015, Defendants moved for partial summary judgment on the claims for Sexual Harassment, Sexual Discrimination, Retaliation, Wrongful Termination, Unseaworthiness, Negligent Infliction of Emotional Distress, and punitive damages. (ECF No. 34.) A timely opposition and reply were filed. (ECF Nos. 37, 43.) That Motion is now before the Court for decision.

4

### III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conclusory, speculative testimony in affidavits or moving papers is insufficient to meet this burden, or raise genuine issues of fact defeating summary judgment. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In evaluating the evidence presented in support of or in opposition to summary judgment, the Court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

## IV. DISCUSSION

### A. PRESUMPTION AGAINST EXTRATERRITORIALITY

Based on Plaintiff's deposition testimony that she ended her personal relationship with Captain Londagin toward the end of the second week of the APL Korea's December 2012 voyage while the vessel was well into international waters (SUP 25, 26), and because Plaintiff's performance of the vast majority of her employment duties was outside of California, Plaintiff's first, second, third and fourth causes of action each fail as a matter of law based on the lack of extraterritorial jurisdiction of California state employment laws.

> *1.  Under the Presumption Against Extraterritoriality, State Employment Laws Do Not Apply Extraterritorially when the Primary Situs of Plaintiff's Employment and the Occurrence of Facts Giving Rise to the Causes of Actions Occur Out of State.*

Plaintiff argues that California employment law under FEHA and the California Constitution should apply extraterritorially to Plaintiff because she is a California resident, she signed aboard the APL Korea in Oakland, California, and the APL Korea is a U.S. flagged vessel with its home port in Oakland, California.

Ordinarily, state statutes are not given extraterritorial effect. *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916). The California Supreme Court has set forth the following presumption against extraterritoriality:

> Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect. The intention to make the act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred "from the language of the act or from its purpose, subject matter or history."

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 897 (C.D. Cal. 2009) (quoting *North Alaskan Salmon*, 174 Cal. at 2).

Turning to the question of statutory interpretation, the applicable provision of the FEHA makes it unlawful "[f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person" to harass an employee or applicant "because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age." Cal. Gov. Code § 12940, (h)(1). On its face, the FEHA imposes no residency requirement on either the employer or the person aggrieved and no limitation based on where the conduct occurred.

However, the majority of courts in California and other jurisdictions have found that the extraterritorial application of FEHA is determined by the <u>situs of both employment and the material elements of the cause of action</u>, as opposed to residence of the employee or the employer. *See, e.g., Guillory v. Princess Cruise Lines, Ltd.*, B192233, 2007 WL 102851 (Cal. Ct. App. 2007); *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008); *see also Priyanto v. M/S AMSTERDAM*, No. CV 07-3811AHMJTLX, 2009 WL 175739 at *7–*8 (C.D. Cal. Jan. 23, 2009). Moreover, the California Court of Appeals has stated that residency, state of employment contract, and place of termination are not themselves sufficient to overcome the presumption that FEHA does not apply when the tortious conduct and situs of employment are outside of California. *Guillory*, 2007 WL 102851, at *4.

This Court previously cited the *Guillory* court's analysis with approval in its published decision in *Sarviss*, 663 F. Supp. 2d at 900, where the presumption against the extraterritorial application of California employment law remained unrebutted because the plaintiff performed the majority of his employment outside of California. 633 F. Supp. 2d. at 899.

The foregoing authorities wholly refute Plaintiff's argument that her California residency or the fact that the incidents occurred on a California-based vessel would overcome the presumption against the extraterritorial application of FEHA.

   *2.    Plaintiff's First, Third, and Fourth Causes of Action for Harassment, Retaliation, and Wrongful Termination under FEHA Fail as a Matter of Law Where All Alleged Acts of Harassment and the Majority of Plaintiff's Employment Occurred on International Waters.*

Plaintiff's causes of action for Sexual Harassment, Retaliation, and Wrongful Termination, are brought under FEHA. Here, the complained-of adverse employment action is the termination of Plaintiff's employment aboard the APL Korea and discrimination by way of sexual harassment at the hands of Captain Londagin.

Under the clear holdings of *Guillory* and *Sarviss*, there is no basis upon which Plaintiff can state a viable employment claim under California law because: (1) Plaintiff stated that she ended her relationship with Captain Londagin toward the end of the second week of the APL Korea's December 2012 voyage, when the ship was well into international waters, so any alleged sexual harassment and adverse employment actions after that point occurred outside of California; and (2) like the plaintiffs in *Guillory* and *Sarviss*, Plaintiff spent the vast majority of her employment with APL working outside of California—and indeed outside of the United States—during Plaintiff's eleven voyages aboard the APL Korea, with only brief stop overs in California ports.

Moreover, to the extent the termination decision could be considered to have been ratified or acknowledged by APL (which APL does not concede), APL is a Delaware corporation with its headquarters in Arizona whose vessels are administered by APL Maritime, a Delaware corporation with its headquarters in the Maryland. In addition, Captain Londagin at all relevant times was a citizen and resident of Washington. Defendants therefore argue that the connection of Plaintiff's termination

to California is remote at best, and insufficient to overcome the presumption against extraterritorial application of California state employment laws.

The Court in *Guillory* confirmed that the place of contract and the place of discharge are not "crucial element[s]" that are sufficient to overcome the presumption against extraterritorial application of statutes. *Guillory,* 2007 WL 102851, at *4. The Court instead focuses on the "place of employment" and the place where "all of the material elements of [the] cause of action occurred." *Id*. As stated above, the majority of Plaintiff's occupational duties and the alleged harassment took place on the high seas.

Thus, under the holdings of *Guillory* and *Sarviss*, Plaintiff's causes of action for Sexual Harassment, Retaliation, and Wrongful Termination each fail as a matter of law, and each of those causes of action are summarily adjudicated in Defendant's favor.

> *3.     Plaintiff's Second Cause of Action for Sexual Discrimination under the California Constitution Also Fails as a Matter of Law.*

Plaintiff's second cause of action for sexual discrimination under the California Constitution is based on the same allegations of sexual harassment. (Compl. ¶ 18 (alleging, under Plaintiff's Second cause of Action, "As a proximate cause of the sexual harassment of the defendants….").)

Defendants argue that this claim should fail for the same reasons that Plaintiff's statutory claims fail; that all alleged acts of harassment took place in international waters, the vast majority of Plaintiff's employment duties took place in international waters, and there is no basis for the extraterritorial application of this specific constitutional provision.

Plaintiff counters that this common law claim should survive because the extraterritorial presumption only applies to statutory claims, not common law claims.

*See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255, (2010) ([T]he presumption is limited to statutes by its terms." )

However, even though the presumption against extraterritoriality does not apply to common law claims, there are still limits on the extraterritorial application of California law. Under California law, the relevant inquiry for whether state law should be applied extraterritorially is not the location of employment or where the contract was formed, but rather whether "the conduct which gives rise to liability . . . occurs in California." *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999).

Here, none of the conduct which gave rise to the liability occurred in California, as discussed above. As such, summary judgment is appropriate as to the second cause of action because there is no basis upon which Plaintiff can allege employment claims under California Constitution.

**B.  UNSEAWORTHINESS**

Plaintiff asserts a claim for unseaworthiness on the grounds that Captain Londagin was unfit for duty. The general warranty of seaworthiness is that the vessel is "reasonably fit." *The Silvia*, 171 U.S. 462, 464 (1898). If the temperament of the vessel's captain is severely impaired, then the ship becomes a "perilous place," thereby violating the warranty. *Boudoin v. Lykes Bros. S. S. Co.*, 348 U.S. 336, 340 (1955). Thus, the captain's temperament and abilities must be "'equal in disposition and seamanship to the ordinary men in the calling.'" *Stechcon v. United States*, 439 F.2d 792, 793 (9th Cir. 1971) (citing *Keen v. Overseas Tankship Corp.*, 194 F.2d 515, 518 (2d Cir. 1952)). The question is whether the behavior was "within the usual and customary standards of the calling," or whether it was "a case of a seaman with a wicked disposition, a propensity to evil conduct, a savage and vicious nature." *Boudoin v. Lykes Bros. S. S. Co.*, 348 U.S. 336, 340 (1955).

Plaintiff has presented evidence of the following conduct: (1) Captain Londagin slapped Plaintiff's buttocks on one occasion (SUF 27); (2) He requested "make-up sex" on at least ten occasions (SUF 28); (3) He banged on her door at night (SUF 29); (4) He laid on the deck outside of Plaintiff's state room on four occasions (SUF 31); (5) He criticized her work performance (SUF 32); and (6) He denied her overtime pay (SUF 33).

In *Williams v. Treasure Chest Casino, L.C.C.*, No. 95-3968, 1998 U.S. Dist. LEXIS 1135 (E.D. La. Feb. 3, 1998), the court considered a plaintiff's unseaworthiness claim based on allegations of sexual harassment where the defendant "made unwelcome sexual advances, requested sexual favors, and engaged in other verbal and physical sexual conduct that unreasonably interfered with her work performance and created a hostile work environment." *Id*. at *3. The court held that plaintiff could not maintain her unseaworthiness claim because she failed to establish she was a victim of a "savage and vicious" attack by the crew. *Id*. at *26. The court explained that for an unseaworthiness claim based on assault by a crew member to be submitted to a jury, there must be "either an assault with a deadly weapon or independent evidence of the assailant's exceptionally quarrelsome nature, habitual drunkenness, his severe personality disorder, or other similar factors." *Id*. at *26–27. Thus, the court granted summary judgment on the plaintiff's claim.

In *Ballance v. Energy Transp. Corp.*, No. 00 CIV 9180 (LMM), 2001 WL 1246586 (S.D.N.Y. Oct. 18, 2001), the plaintiff, a cook, alleged a crew member made provocative comments to her including sexual content and innuendo and would frequently place his hands on the plaintiff's buttocks. *Id* at *3. The plaintiff then took sick leave for her shaken emotional state. *Id*. at *4. Upon returning to work from a four month leave, she was harassed by a different crew member who placed his hands on her buttocks and untied the apron she was wearing. *Id*. at *5. The court held that the plaintiff's unseaworthiness claim could not survive defendant's motion to dismiss.

Likewise with the motion for summary judgment because the alleged assault on the plaintiff did not rise to the level of a "savage and vicious" attack. *Id.* at *19.

Here, Plaintiff admits that the only physical contact she had with Captain Londagin after their relationship ended was Captain Londagin's alleged slap of her buttocks. (SUF 28.) But, as the *Williams* court held, even unwelcome and harassing physical contact is insufficient to support a claim for unseaworthiness absent a "savage and vicious attack." Moreover, the *Ballance* court specifically held that a slap of the buttocks does not constitute such an attack. Because Plaintiff admits this was the only physical contact with Captain Londagin after their consensual relationship ended, Plaintiff's unseaworthiness claim fails.

## C. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff asserts a claim for Negligent Infliction of Emotional Distress ("NIED") against APL under the Jones Act.

The federal standard for the negligent infliction of emotional distress is provided by *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 547–48 (1994). Under this test, applicable in the maritime jurisdiction of the United States, the tort is committed by a defendant subjecting a plaintiff to emotional harm within "the zone of danger" created by the conduct of the defendant. *Id.* In *Gottshall*, the Supreme Court held that "the zone of danger" test allowed recovery for "those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.*

The first prong of the test—that is, whether a plaintiff sustained a "physical impact—"turns not on whether he or she was physically touched, but rather, whether he or she was physically injured by the defendant. *Higgins*, 143 F. Supp. 2d at 359 (applying the rule set in *Gottshall* and further refined in *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 430 (1997)); *see also Wahlstrom v. Metro-North Commuter R.R.*, 89 F. Supp. 2d 506, 517 (S.D.N.Y. 2000) ("[M]ere uninvited

touching does not automatically raise a jury question on the issue of whether plaintiff suffered a 'physical impact.'"). In *Higgins*, for example, while the plaintiff was allegedly sexually harassed both verbally and physically, she testified that she was never physically injured by the contact. *Id.* The *Higgins* court concluded that even physical manifestations of her emotional injury were not enough to satisfy the physical impact test. 143 F. Supp. 2d at 360.

Thus, if there was no physical injury, the plaintiff may only recover if she was placed in immediate risk of physical harm. Although the *Gottshall* court did not supply guidance on how to analyze when a plaintiff is in immediate risk of physical harm, the Second Circuit has said that "the risk of physical harm to plaintiff must be, at the very least, more than minimal." *Nelson v. Metro-N. Commuter R.R.*, 235 F.3d 101, 113 (2d Cir. 2000).

The *Gottshall* standard and the rules set forth by courts following *Gottshall* state that a plaintiff is permitted to recover for emotional injury alone if she is within the "zone of danger." *Gottshall*, 512 U.S. at 547–48. While plaintiff does not allege that she suffered the kind of "physical impact" necessary to satisfy the first prong of the zone of danger test, there still is a question of fact as to whether plaintiff feared an immediate risk of physical harm by the alleged sexual harassment aboard the APL Korea.

Plaintiff provides evidence that Captain Londagin's conduct made her fear for her safety aboard the APL Korea, so much so that she kept a chair behind her stateroom door so that he could not enter. In *Stacy v. Rederiet Otto Danielsen, A.S.*, a Ninth Circuit case, the plaintiff alleged he was within the zone of danger and that he suffered emotional distress from the fright caused by the actions of the defendant. The court held that "[n]othing more was required to assert a cause of action cognizable under maritime law." 609 F.3d 1033, 1035 (9th Cir. 2010).

13

Thus, because Plaintiff has adequately set forth a claim under the Jones Act and there is an issue of material fact, the Court denies summary judgment as to Plaintiff's NIED claim.

### D. PUNITIVE DAMAGES

Plaintiff asserts claims for punitive damages. However, the Court has dismissed Plaintiff's discrimination, harassment, retaliation, wrongful termination, and unseaworthiness claims. Punitive damages are not recoverable under Plaintiff's remaining claims for NIED under the Jones Act or Maintenance and Cure. *See McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 389 (5th Cir. 2014) cert. denied, 135 S. Ct. 2310 (2015). Therefore, Plaintiff's claim for punitive damages must be dismissed.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** APL's Motion for Partial Summary Judgment. (ECF No. 34.) Defendants' Motion is granted as to Plaintiff's first, second, third, fourth, and seventh causes of action and claim for punitive damages.

**IT IS SO ORDERED.**

September 24, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**